UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BEACH GLO TANNING STUDIO INC., on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SCOTTSDALE INSURANCE COMPANY; and NATIONWIDE MUTUAL INSURANCE COMPANY,<br><br>Defendants. | Case No. 3:20-cv-13901 (BRM) (ZNQ)<br><br>OPINION |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is a Motion to Dismiss filed by Defendants Scottsdale Insurance Company ("Scottsdale") and Nationwide Mutual Insurance Company ("Nationwide" and collectively with Scottsdale, "Defendants") seeking to dismiss Plaintiff Beach Glo Tanning Studio Inc.'s ("Beach Glo") Class Action Complaint (the "Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(1), (2) and (6). (ECF No. 4.) Beach Glo opposed Defendants' Motion to Dismiss (ECF No. 7.) Defendants filed a Reply. (ECF No. 11.) The parties filed multiple letters advising the Court of recent court decisions relevant to this motion to dismiss inquiry. (ECF Nos. 10, 12–14, 16–19.) Having reviewed the submissions filed in connection with the motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause appearing, Defendants' Motion to Dismiss is **GRANTED.**

**I.　BACKGROUND**

This is one of a series of decisions involving an insurance company declining coverage for an insured's claim that stems from the government shutdown orders issued in response to the COVID-19 pandemic. The insured claims business losses as a result of the shutdown orders, and the insurance carrier invokes certain exclusion provisions in the insurance policy to decline coverage for such losses.

For the purposes of this Motion to Dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to the plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Furthermore, the Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citing *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

Beach Glo is a tanning studio located in Point Pleasant, New Jersey. (ECF No. 1 ¶ 2.) Defendants issued Beach Glo a commercial property insurance policy (the "Policy"). (*Id.* ¶ 39.) The Policy period runs from June 12, 2019, to June 12, 2020. (ECF No. 7 at 9.) Beach Glo's proposed class includes policyholders who paid premiums to Defendants in exchange for business insurance policies that included lost business income and extra expense coverages. (ECF No. 1 ¶¶ 9–10.)

The Policy contains a Business Income (and Extra Expense) Coverage Form that covers loss of business income ("the Business Income Coverage"), which states:

> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income

> Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.

(*Id.* ¶ 42.) The Policy's "Extra Expense" provision is triggered only if the Business Income Coverage applies and covers "necessary expenses you incur during the 'period of restoration' that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss" (the "Extra Expense Coverage"). (*Id.* ¶ 44.) The Business Income (and Extra Expense) Coverage Form further provides "Civil Authority" coverage (the "Civil Authority Coverage"), stating:

> When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
> (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
> (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

(*Id.* ¶ 45.) A "Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy." (ECF No. 1-4 at 85, § A.) In addition, the Policy contains an exclusion (the "Virus Exclusion") that excludes coverage for losses caused by or resulting from a virus and "applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy." (*Id.* at 116, § A.) The Virus Exclusion states "[w]e will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." (ECF No. 1 ¶ 47.)

In March 2020, in response to the COVID-19 pandemic, New Jersey Governor Murphy issued orders (the "Closure Orders") requiring the suspension of business at various establishments, including Beach Glo's business. (*Id*. ¶¶ 33–34.) Defendants refused to cover Beach Glo's and other class members' losses allegedly caused by the Closure Orders under the business insurance coverage. (*Id*. ¶¶ 50, 52.)

On October 5, 2020, Beach Glo, on behalf of itself and all others similarly situated, filed the Complaint. (ECF No. 1.) Beach Glo seeks to represent a Multi-State Class and a New Jersey Sub-Class. (*Id*. ¶ 55.) The Multi-State Class includes all entities that have entered into standard all-risk commercial insurance policies with Defendants insuring properties in the United States, and the New Jersey Sub-Class includes all entities that have entered into standard all-risk commercial insurance policies with Defendants insuring properties in New Jersey. (*Id*.) In the Complaint, Beach Glo asserts the following claims: declaratory relief for the Business Income Coverage (Count One); breach of contract for the Business Income Coverage (Count Two); declaratory relief for the Civil Authority Coverage (Count Three); breach of contract for the Civil Authority Coverage (Count Four); declaratory relief for the Extra Expense Coverage (Count Five); breach of contract for the Extra Expense Coverage (Count Six); violations of the New Jersey Consumer Fraud Act ("CFA"), N.J. Stat. Ann. § 56:8-1 *et seq*. (Count Seven); and unjust enrichment (Count Eight). (ECF No. 7 at 9–10.) On October 26, 2020, Defendants filed a Motion to Dismiss Beach Glo's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), (2) and (6). (ECF No. 4.) On December 7, 2020, Beach Glo opposed Defendants' Motion to Dismiss. (ECF No. 7.) On December 28, 2020, Defendants filed a Reply. (ECF No. 11.) The parties also filed multiple letters advising the Court of recent court decisions relevant to this

motion to dismiss inquiry (ECF Nos. 10, 12–14, 16–19), until the Court ordered on March 25, 2021, that no further filings on this pending motion to dismiss would be accepted (ECF No. 20).

## II. LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a probability requirement." *Id.* (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be

pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (citing Fed. R. Civ. P. 8(a)(2)). However, courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res. Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286.

While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *Burlington*, 114 F.3d at 1426 (citing *Shaw*, 82 F.3d at 1220).

### III. DECISION

#### A. The Court May Exercise Jurisdiction Over This Matter

Defendants maintain the Court lacks subject matter jurisdiction over Nationwide, which Beach Glo does not identify to have issued the Policy, so that there is no actual case or controversy between Beach Glo and Nationwide. (ECF No. 4-1 at 27.) Defendants insist

Nationwide is not a proper party here. (ECF No. 11 at 16.) Defendants also contend the Court lacks personal jurisdiction over the claims of non-forum putative class members. (ECF No. 4-1 at 27.) Beach Glo refers to different pages of the Policy that indicate Nationwide's involvement with the Policy. (ECF No. 7 at 36–37.) Beach Glo states it is directed to a website likely associated with Nationwide when reporting a claim under the Policy. (*Id*. at 37.) Beach Glo suggests the business relationship between Nationwide and Scottsdale can only be revealed in discovery. (*Id*.) The parties agree the personal jurisdiction issue is better addressed at the class certification stage. (*Id*. at 37–38; ECF No. 4-1 at 28.) The Court finds it may exercise jurisdiction at this stage.

"Under Article III of the Constitution, a federal court may exercise jurisdiction only where there is an actual case or controversy to be decided." *1st Westco Corp. v. Sch. Dist. of Phila.*, 6 F.3d 108, 112–13 (3d Cir. 1993) (citing *Golden v. Zwickler*, 394 U.S. 103, 108 (1969)). "The standing doctrine defines what is a 'case' or 'controversy.'" *Long v. Se. Pa. Transp. Auth.*, 903 F.3d 312, 320–21 (3d Cir. 2018). To establish standing, "[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751 (1984). "A lack of standing is a defect of subject matter jurisdiction." *Jackson v. Fed. Bureau of Prisons*, Civ. A. No. 19-287, 2019 U.S. Dist. LEXIS 212706, at *6 (M.D. Pa. Dec. 9, 2019) (citing *McCray v. Fid. Nat'l Title Ins. Co.*, 682 F.3d 229, 243 (3d Cir. 2012)). "Like all merits arguments, the question of whether a plaintiff has sued the correct defendant should ordinarily be addressed at the pleading stage by affording the plaintiff the protections provided by Rule 12(b)(6)." *Davis v. Wells Fargo*, 824 F.3d 333, 347 (3d Cir. 2016).

Here, Beach Glo points out: (1) Nationwide's logo appears on the first page of the Policy;

(2) the Policy states "[y]our insurance policy has been placed with a Nationwide® insurance company;" and (3) the Policy provides a way of claim reporting "via our website at www.nationwideexcessandsurplus.com." (ECF No. 1-4 at 2, 95; ECF No. 7 at 36–37.) In other words, Beach Glo has claimed Nationwide, though allegedly not having issued the Policy, likely participated in the Policy's issuing and claims-handling process. *See Arnold v. Liberty Mut. Ins. Co.*, 392 F. Supp. 3d 747, 762–63 (E.D. Ky. 2019) (rejecting the defendant's assertion "that, because the policy was issued by [the subsidiary], not [the parent company], [p]laintiffs' pleadings fail[ed] on their face to demonstrate standing" against the parent company "without piercing the corporate veil," when the plaintiff alleged the parent company "had a hand in developing the policy exclusions and marketing materials" and "participated in the claims-handling process"). Accepting Beach Glo's allegations as true, the Court finds Beach Glo has "set forth an arguable basis in law that there is a causal connection between the injury and [Nationwide's] alleged wrongdoing and that the injury can likely be redressed." *Id*. (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)) (internal quotations omitted). Since Beach Glo has "met the constitutionally-minimum requirements to establish standing, the Court has subject-matter jurisdiction and dismissal is not required under Rule 12(b)(1)." *Id*. at 763.

The Court need not address at this stage the issue of personal jurisdiction over the claims of non-forum putative class members, because the parties agree that the issue is better addressed at the class certification stage. Defendants explain they raise the issue here to preserve it and to avoid waiver of the defense of lack of personal jurisdiction, which they may re-raise at the appropriate time. (ECF No. 4-1 at 28.) Therefore, dismissal is not required under Rule 12(b)(2).

In conclusion, the Court may exercise jurisdiction over this matter at the current stage.

    **B.**    **The Virus Exclusion Excludes Beach Glo's Recovery under the Policy**

### 1. A Virus Need Not Be at the Insured Property to Trigger the Virus Exclusion

Beach Glo argues the Virus Exclusion does not apply here, because it concerns contamination or infestation by a virus at the insured property, not the general existence of a virus. (ECF No. 7 at 20.) The Court disagrees.

The Court finds no basis to adopt Beach Glo's proposed interpretation. The plain language of the Virus Exclusion does not require a virus to be at the insured property. Had Defendants meant to impose such a requirement, they could have easily added it to the Virus Exclusion, as they did with the exclusion for "'Fungus', Wet Rot, Dry Rot And Bacteria," which excludes insurance coverage for loss or damage caused by the "[p]resence . . . of 'fungus', wet or dry rot or bacteria." (ECF 1-4 at 87, § B.1.h.) Because the Virus Exclusion "bears no such limitation," an interpretation that "the exclusion does not apply unless Covid-19 is present at the [insured premise]" should fail. *Hajer v. Ohio Sec. Ins. Co.,* Civ. A. No. 20-283, 2020 U.S. Dist. LEXIS 229317, at *12 (E.D. Tex. Dec. 7, 2020); *see also Causeway Auto., LLC v. Zurich Am. Ins. Co.*, Civ. A. No. 20-8393, 2021 U.S. Dist. LEXIS 25325, at *13 n.6, 14–15 (D.N.J. Feb. 10, 2021) (finding the same virus exclusion "in no way suggest[ed] that the virus must be present at the insured property for the exclusion to apply"); *Diesel Barbershop, LLC v. State Farm Lloyds*, Civ. A. No. 20-461, 2020 U.S. Dist. LEXIS 147276, at *7, 17–18, 20 (W.D. Tex. Apr. 1, 2016) (concluding a virus exclusion that applied only when a virus "induce[d] or [wa]s capable of inducing physical distress, illness or disease" was triggered, though "COVID-19 was not present" at the insured premise).

### 2. Appleman's Rule Applies to the Virus Exclusion

Defendants contend Appleman's Rule does not apply here, because the phrases "caused by" and "resulting from" in the Virus Exclusion are sufficiently broad to constitute anti-

concurrent/sequential cause language. (ECF No. 11 at 13.) Beach Glo explains, since the Virus Exclusion does not contain anti-concurrent/sequential cause language, Appleman's Rule applies. (ECF No. 7 at 22–23.) The Court agrees.

If the language of an insurance exclusion "requires a causal link, courts must consider its nature and extent because evaluating that link will determine the meaning and application of the exclusion." *Flomerfelt v. Cardiello*, 997 A.2d 991, 997 (N.J. 2010). "[I]n New Jersey, when an insurance policy uses an exclusion which bars coverage for losses caused by a particular peril, the exclusion applies only if the excluded peril was the 'efficient proximate cause' of the loss." *Zurich Am. Ins. Co. v. Keating Bldg. Corp.*, 513 F. Supp. 2d 55, 70 (D.N.J. 2007) (citing *Auto Lenders Acceptance Corp. v. Gentilini Ford, Inc.*, 854 A.2d 378, 385 (N.J. 2004)). Therefore, "an insured is normally afforded coverage where an 'included cause of loss is either the first or last step in the chain of causation which leads to the loss.'" *Um v. Cumberland Ins. Grp.*, Civ. A. No. A-0625-06T2, 2008 N.J. Super. Unpub. LEXIS 2800, at *13 (N.J. Super. Ct. App. Div. Mar. 13, 2008) (citing *Assurance Co. of Am., Inc. v. Jay-Mar, Inc.*, 38 F. Supp. 2d 349, 353 (D.N.J. 1999)); *see also Pub. Serv. Enter. Grp., Inc. v. Ace Am. Ins. Co.*, Civ A. No. ESX-L-4951-132015, N.J. Super. Unpub. LEXIS 620, at *22 (N.J. Super. Ct. Law Div. Mar. 23, 2015) (citing *Auto Lenders*, 854 A.2d at 385) ("[A] restriction in an insurance policy does not apply if either the first or the last cause of the loss is not subject to the restriction.").

> In other words, recovery may be allowed where the insured risk was the last step in the chain of causation set in motion by an uninsured peril, or where the insured risk itself set into operation a chain of causation in which the last step may have been an excepted risk.

*Franklin Packaging Co. v. Cal. Union Ins. Co.*, 408 A.2d 448, 449 (N.J. Super. Ct. Law Div. 1979) (citing 5 *Appleman, Insurance Law and Practice* § 3083 at 309–11 (1970)). This is called

the "efficient proximate cause doctrine, more commonly referred to as Appleman's Rule." *Estate of Doerfler v. Fed. Ins. Co.*, Civ. A. Nos. A-4215-18T1, A-4217-18T1, 2020 N.J. Super. Unpub. LEXIS 920, at *8 (N.J. Super. Ct. App. Div. May 14, 2020).

However, an anti-concurrent or anti-sequential clause "preempts such background interpretation principles as the 'efficient proximate cause' doctrine, which by their terms apply only absent contrary policy language." *Lam Inv. Research, LLC v. Pub. Serv. Mut. Ins. Co.*, Civ. A. No. 12-5576, 2016 U.S. Dist. LEXIS 45116, at *12–13 (D.N.J. Apr. 1, 2016) (citing *Ashrit Realty LLC v. Tower Nat'l Ins. Co.*, Civ. A. No. A-1647-13T4, 2015 N.J. Super. Unpub. LEXIS 107, at *11–12 (N.J. Super. Ct. App. Div. Jan. 20, 2015)). "An anti-concurrent causation or anti-sequential causation clause will 'exclude coverage when a prescribed excluded peril, alongside a covered peril, either simultaneously or sequentially, causes damage to the insured.'" *N.J. Transit Corp. v. Certain Underwriters at Lloyd's London*, 221 A.3d 1180, 1192 (N.J. Super. Ct. App. Div. 2019) (citing *Simonetti v. Selective Ins.*, 859 A.2d 694, 700 (N.J. Super. Ct. App. Div. 2004)); *see also Lam Inv.*, 2016 U.S. Dist. LEXIS 45116, at *13 (citing *Ashrit*, 2015 N.J. Super. Unpub. LEXIS 107, at *11–12) (finding that the anti-concurrent/anti-sequential language would deny recovery when "one of the undisputed causes of loss was the subject of an exclusion").

Here, the Court notes the preamble of several other exclusions in the Policy contains the anti-concurrent/sequential cause language.[1] But the Virus Exclusion is without such anti-concurrent/sequential language. As a result, Appleman's Rule applies. In other words, if a Covered Cause of Loss starts or ends the sequence of events leading to Beach Glo's losses, Beach Glo is entitled to recovery under the Policy.

---

[1] *See, e.g.,* "We will not pay for loss caused by or resulting from any of the following. Such loss is excluded *regardless of any other cause or event that contributes concurrently or in any sequence to the loss*." (ECF No. 1-4 at 85, § B.1.)

11

### 3. The Virus Exclusion Is Not Ambiguous

Beach Glo states the Virus Exclusion is ambiguous as to the causation of losses and whether it contemplates a worldwide COVID-19 pandemic that results in statewide shutdown orders. (ECF No. 7 at 29–30.) Beach Glo contends discovery is warranted to determine the scope of the Virus Exclusion, which would require extrinsic evidence concerning (1) the insurer's representations to the insurance regulators in seeking approval for the exclusion that may trigger regulatory estoppel, and (2) whether the Virus Exclusion was intended to exclude losses caused by the shutdown orders in response to an international pandemic. (*Id.* at 30–31.) Defendants counter Beach Glo alleges no misrepresentation by Defendants that may trigger regulatory estoppel. (ECF No. 11 at 15.) Defendants insist the Virus Exclusion is not ambiguous. (*Id.*) The Court agrees.

In *Causeway* and *Physics*, the court found a virus exclusion identical to the Virus Exclusion unambiguous. *Causeway*, 2021 U.S. Dist. LEXIS 25325, at *4–5, 19; *Physics v. Nationwide Ins.*, Civ. A. No. 20-9231, 2021 U.S. Dist. LEXIS 44738, at *3–4, 13 (D.N.J. Mar. 10, 2021). The Court could simply follow the two binding cases, thereby ending the ambiguity analysis here. Nevertheless, the Court will entertain fully the parties' arguments on the ambiguity issue, which, as illustrated below, leads to the same conclusion.

A genuine ambiguity exists "where the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage." *Lee v. Gen. Accident Ins. Co.*, 767 A.2d 985, 987 (N.J. Super. Ct. App. Div. 2001) (citing *Weedo v. Stone-E-Brick, Inc.*, 405 A.2d 788, 795 (N.J. 1979)). "An insurance policy is not ambiguous merely because two conflicting interpretations of it are suggested by the litigants." *Powell v. Alemaz, Inc.*, 760 A.2d 1141, 1147 (N.J. Super. Ct. App. Div. 2000).

Here, the usage of phrases "caused by" and "resulting from" does not create an ambiguity, because Appleman's Rule clarifies the causal relationship in the Virus Exclusion. The reasoning that the phrases such as "on account of," "because of," and "caused by an occurrence" "are ambiguous because these phrases could connote one of several types of causation disregards the plain meaning of the phrases and is not a ground for finding an ambiguity." *Carlin v. Cornell, Hegarty & Koch*, Civ. A. No. A-1984-09T3, 2011 N.J. Super. Unpub. LEXIS 2155, at *22–23 (N.J. Super. Ct. App. Div. 2011) (citations omitted). That Appleman's Rule applies to some exclusions but not others in an insurance policy does not lead to an ambiguity. *See Nat'l Mfg. Co. v. Citizens Ins. Co. of Am.*, Civ. A. No. 13-314, 2016 U.S. Dist. LEXIS 180145, at *16 n.8 (D.N.J. Dec. 30, 2016) (applying Appleman's Rule to the three exclusions that "d[id] not contain anti-concurrent or anti-sequential language, although that language d[id] appear in" another exclusion, to which Appleman's Rule did not apply).

Also, the Virus Exclusion need not explicitly refer to a pandemic to be applicable here. After all, the "distinction between a 'virus' and a 'pandemic' is not a distinction at all because 'the current pandemic is a widespread outbreak of disease caused by the COVID-19 virus.'" *Santo's Italian Café LLC v. Acuity Ins. Co.,* Civ. A. No. 20-1192, 2020 U.S. Dist. LEXIS 239382, at *44–45 (N.D. Ohio Dec. 21, 2020) (rejecting the plaintiff's argument "that the virus exclusion is ambiguous and does not address a pandemic"); *see also Newchops Rest. Comcast LLC v. Admiral Indem. Co.*, Civ. A. Nos. 20-1949, 20-1869, 2020 U.S. Dist. LEXIS 238254, at *18–19 (E.D. Pa. Dec. 17, 2020) (citations omitted) ("The lack of a specific reference to a pandemic in the policy does not render the provision ambiguous. In any event, there is no real distinction between 'virus' and 'coronavirus pandemic.'"); *Franklin EWC, Inc. v. Hartford Fin. Servs. Grp.*, Civ. A. No. 20-4434, 2020 U.S. Dist. LEXIS 174010, at *6–7 (N.D. Cal. Sept. 22, 2020)

13

(internal quotations omitted) (rejecting the plaintiff's argument that had the defendant "intended to exclude risks associated with a pandemic, the [p]olicy could have referred explicitly to these risks or included a specific exclusion targeted at pandemics," because "[n]othing in the [v]irus [e]xclusion indicate[d] it [wa]s limited to viruses arising from the insured premises rather than a pandemic").

Therefore, the Virus Exclusion is not ambiguous. As a result, the Court should not consider extrinsic evidence in interpreting the Virus Exclusion, and discovery is not warranted here. *See Nye v. Ingersoll Rand Co.*, 783 F. Supp. 2d 751, 761 n.1 (D.N.J. 2011) (citing *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 745 (Tex. 1998)) ("When the policy is not ambiguous on its face, extrinsic evidence may not be used to create an ambiguity."); *YA Glob. Invs., L.P. v. Cliff*, 15 A.3d 857, 864 (N.J. Super. Ct. App. Div. 2011) (citing *Deerhurst Estates v. Meadow Homes, Inc.*, 165 A.2d 543, 551 (N.J. Super. Ct. App. Div. 1960)) ("It is only when language is susceptible to more than one reasonable interpretation that extrinsic evidence should be considered as an interpretative aid."); *Am. Cas. Co. v. Continisio*, Civ. A. No. 91-5107, 1992 U.S. Dist. LEXIS 23120, at *20 (D.N.J. Sept. 11, 1992) ("Having determined that the regulatory exclusion is unambiguous, we will not grant the [insured's] request for discovery of extrinsic evidence regarding the parties' intent.").

### 4. Beach Glo Is Not Entitled to Recovery Under Appleman's Rule

Defendants argue, because Beach Glo's losses were caused by and resulted from COVID-19, the Virus Exclusion bars Beach Glo recovery under the Policy. (ECF No. 4-1 at 13–14.) Defendants contend Beach Glo cannot escape the Virus Exclusion by alleging its losses were caused by the Closure Orders and not a virus. (*Id*. at 15.) Defendants state, even if Appleman's Rule applies and the Court concluded it does in Part III.B.2, *supra*, the Virus

Exclusion bars coverage because COVID-19 is the efficient proximate cause of Beach Glo's losses. (ECF No. 11 at 14.) Beach Glo maintains the actual cause of its losses was the Closure Orders and not a virus. (ECF No. 7 at 20.) Beach Glo insists it should be afforded coverage under the Policy, because an included cause of loss, *i.e.*, the Closure Orders, was the last step in the chain of causation leading to its losses. (*Id.* at 25.) Beach Glo contends discovery is warranted to decide whether the Closure Orders are an efficient proximate cause of Beach Glo's losses. (*Id.* at 29–30.) The Court disagrees.

Here, neither the cause that starts nor ends the sequence of events leading to Beach Glo's alleged losses is a Covered Cause of Loss. The starting cause, *i.e.*, COVID-19, is not a Covered Cause of Loss because of the Virus Exclusion. The end cause, which Beach Glo claims to be the Closure Orders, is not a Covered Cause of Loss either. The Closure Orders "were issued as the direct result of COVID-19—a cause of loss that falls squarely within the Virus Exclusion." *Franklin EWC*, 2020 U.S. Dist. LEXIS 174010, at *6–7 (rejecting the plaintiff's argument that "[t]he [c]overed [c]ause of [l]oss . . . [wa]s the [c]losure [o]rders"); *see also Newchops*, 2020 U.S. Dist. LEXIS 238254, at *17 (finding that "the shutdown orders . . . [we]re . . . excluded from the definition of covered cause of loss" because of a virus exclusion). In other words, the Closure Orders could not be "the efficient proximate cause of [Beach Glo's] losses" for being "the last act that contributed to those losses," because the Closure Orders "and the virus [we]re so inextricably connected that it [wa]s undeniable that the [Closure] Orders were issued because [of] the virus," thereby triggering the Virus Exclusion even though it "d[id] not contain an anti-concurrent clause." *Causeway*, 2021 U.S. Dist. LEXIS 25325, at *13 n.6, 14–15; *see also Garmany of Red Bank, Inc. v. Harleysville Ins. Co.*, Civ. A. No. 20-8676, 2021 U.S. Dist. LEXIS 50985, at *14–15 (D.N.J. Mar. 18, 2021) (finding that, "even if the [p]olicy did not contain an

anti-concurrent clause, [p]laintiff cannot show that the [government shutdown orders], and not the COVID-19 virus, were the proximate cause of its losses," because the orders "were issued '[i]n response to the COVID-19 pandemic'").

Accordingly, under Appleman's Rule, the Virus Exclusion bars Beach Glo's coverage under the Policy. As a result, whether Beach Glo has sustained any physical loss or damage is irrelevant. *Physics*, 2021 U.S. Dist. LEXIS 44738, at *17 ("[B]ecause the Virus Exclusion applies and is legally enforceable, the [c]ourt need not entertain the question of whether [p]laintiff's alleged losses constitute 'direct physical loss . . . or damage.'"); *Mac Prop. Grp. LLC v. Selective Fire & Cas. Ins. Co.*, Civ. A. No. L-2629-20, 2020 N.J. Super. Unpub. LEXIS 2244, at *20 (N.J. Super. Ct. Law Div. Nov. 5, 2020) ("It therefore does not matter whether the closure of plaintiff's business as a result of governmental orders . . . constitutes direct physical damage to covered property, nor whether civil authority coverage can be triggered, since the reason for the exercise of that civil authority was the virus."); *N&S Rest. LLC v. Cumberland Mut. Fire Ins. Co.*, Civ. A. No. 20-05289, 2020 U.S. Dist. LEXIS 206972, at *7–8 (D.N.J. Nov. 5, 2020) ("[T]he [c]ourt finds it unnecessary to decide whether [p]laintiff's claim resulted from direct physical loss or damage because the [c]ourt finds that the [v]irus [e]xclusion plainly applies here, barring coverage."); *c.f. Optical Servs. USA/JCI v. Franklin Mut. Ins. Co.*, Civ. A. No. BER-L-3681-20, 2020 N.J. Super. Unpub. LEXIS 1782, at *8, 27–28 (N.J. Super. Ct. Law Div. Aug. 13, 2020) (denying the defendant insurance carrier's motion to dismiss and allowing the plaintiff to prove "the event of the Covid-19 closure may be a covered event," because of plaintiff's argument "that physical damage occurs where a policy holder loses functionality of their property and by operation of civil authority such as the entry of an executive order results in

a change to the property," when the parties agreed the virus exclusion "would not apply to this case").

Finally, Beach Glo's cited *Henderson*, which found a business interruption insurance policy could reasonably be interpreted to cover the loss of use of property, despite an exclusion provision termed "Microorganism Exclusion." (ECF No. 12 (citing *Henderson Rd. Res. Sys. Inc. v. Zurich Am. Ins. Co.*, Civ. A. No. 20-1239, 2021 U.S. Dist. LEXIS 9521 (N.D. Ohio Jan. 19, 2021)).) But *Henderson* is inapposite here. In *Henderson*, the court "kn[e]w that insurers included the Microorganism [E]xclusion in their polices to exclude coverage for damage to properties caused by the contamination of viruses or bacteria on the premises," and "the parties [] stipulated to the fact that COVID-19 did not contaminate the [p]laintiffs' premises." *Henderson*, 2021 U.S. Dist. LEXIS 9521, at *44. With such an understanding, the *Henderson* court concluded the microorganism exclusion did not bar coverage for the insured's damages sustained during the COVID-19 pandemic, because "[u]nder Ohio law, the [c]ourt must attempt to construe an exclusion . . . 'in conformity with the intention of the parties as gathered from the ordinary and commonly understood meaning of the language employed.'" *Id.* at *43–44 (citing *Bluemile, Inc. v. Atlas Indus. Contrs., Ltd.*, 102 N.E.3d 579, 585 (Ohio Ct. App. 2017)). Because the *Henderson* decision on insurance coverage was made pursuant to Ohio law, which does not apply here, *Henderson* is irrelevant to this motion to dismiss inquiry.

Therefore, Beach Glo is not entitled to relief under Counts One, Two, Three, Four, Five, and Six.

    **C.**    **Beach Glo's CFA Claim Is Not Viable**

Defendants maintain Beach Glo's CFA claim fails, because (1) Beach Glo is not entitled to coverage under the Policy, (2) the CFA does not apply to insurance disputes involving the

denial of an insurance claim, (3) a breach of contract is not *per se* unfair or unconscionable, and Beach Glo does not allege any bad faith on Defendants' part, (4) Beach Glo does not sufficiently allege Defendants' misrepresentation to have a viable CFA claim, and (5) Beach Glo is on notice of the clear and unambiguous terms of the Policy. (ECF No. 4-1 at 24–26.) Beach Glo counters the CFA may apply to disputes involving denial of insurance claims. (ECF No. 7 at 32 (citing *Weiss v. First Unum Life Ins. Co.*, 482 F.3d 254 (3d Cir. 2007)).) Beach Glo alleges Defendants committed unconscionable commercial practices with regards to the sale of the "all risk" Policy, which was represented to be "full coverage" that would "provide coverage for any kind of loss of income." (*Id*. at 35.) The Court finds Beach Glo fails to assert a viable CFA claim.

The CFA is "not intended as a vehicle to recover damages for an insurance company's refusal to pay benefits." *Myska v. N.J. Mfrs. Ins. Co.*, 114 A.3d 761, 777 (N.J. Super. Ct. App. Div. 2015) (citations omitted); *see also Smith v. State Farm Fire & Cas. Co.*, Civ. A. No. 19-10319, 2020 U.S. Dist. LEXIS 221320, at *21 (D.N.J. Nov. 25, 2020) (citing *Granelli v. Chi. Title Ins. Co.*, 569 F. App'x 125, 133 (3d Cir. 2014)) ("New Jersey courts . . . have consistently held that the payment of insurance benefits is not subject to the Consumer Fraud Act."). *Weiss* is inapposite here, because it "dealt with 'the allegedly fraudulent practice of discontinuing previously authorized benefit payments,' as opposed to a case in which the plaintiff filed an insurance claim and 'was denied . . . benefits.'" *Smith*, 2020 U.S. Dist. LEXIS 221320, at *21 (citing *Alpizar-Fallas v. Favero*, 908 F.3d 910, 916–17 (3d Cir. 2018)); *see also Myska*, 114 A.3d at 777 ("[T]he facts in *Weiss* are significantly distinguishable from those at hand. The court in *Weiss* found the CFA applied to allegations of fraudulent discontinuation of previously authorized benefits. The [*Weiss* court] did not discuss the precedent we have cited, which excludes determination of initial coverage disputes."). Since Beach Glo is seeking damages for

Defendants' refusal to pay benefits under the Policy, the CFA is not applicable here. Therefore, Beach Glo is not entitled to relief under Count Seven.

### D. Beach Glo's Unjust Enrichment Claim Is Not Viable

Defendants contend Beach Glo's unjust enrichment claim fails, because (1) Beach Glo is not entitled to coverage under the Policy, (2) the claim is based on an enforceable contract, and (3) the claim is derivative of Beach Glo's CFA claim. (ECF No. 4-1 at 26–27.) Beach Glo claims to have properly asserted an unjust enrichment claim, by alleging Defendants unjustly received and retained a benefit without payment. (ECF No. 7 at 36.) Beach Glo argues it can pursue an unjust enrichment claim along with a breach of contract claim. (*Id.*) The Court disagrees.

"To establish unjust enrichment, a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust." *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994) (citations omitted). "To state a claim for unjust enrichment under New Jersey law, [the plaintiff] must plead that [the defendant] was enriched in a manner not governed by any enforceable contract." *Senft v. Fireman's Fund Ins. Co.*, Civ. A. No. 14-7805, 2015 U.S. Dist. LEXIS 61870, at *12 (D.N.J. May 12, 2015) (citations omitted); *see also Bowen v. Bank of Am.*, Civ. A. No. 14-353, 2015 U.S. Dist. LEXIS 124871, at *11 (D.N.J. Sept. 18, 2015) (citing *Suburban Transfer Serv., Inc. v. Beech Holdings, Inc.*, 716 F.2d 220, 226–27 (3d Cir. 1983)) ("[L]iability for unjust enrichment 'will not be imposed . . . if an express contract exists concerning the identical subject matter.'"); *Garcia v. Prudential Life Ins. Co.*, Civ. A. No. 08-5756, 2009 U.S. Dist. LEXIS 120834, at *41 (D.N.J. Dec. 29, 2009) (citations omitted) ("An action based on a theory of unjust enrichment is not available when there is an express, written contract, because no agreement can be implied where there is an express agreement."). "Because the parties' rights and obligations are governed by their

19

insurance contract, unjust enrichment is not a viable theory of recovery for" Beach Glo under Count Eight. *Senft*, 2015 U.S. Dist. LEXIS 61870, at *12.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED** pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court **DISMISSES WITH PREJUDICE** the Complaint on all counts. An appropriate order follows.

**Date: May 28, 2021**  */s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**